

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 20  A II: 45

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| TROY EVERSON | CIVIL ACTION |
|---|---|
| VERSUS | NO. 05-840 |
| JAMES MILLER ET AL. | SECTION "I" (2) |

## REPORT AND RECOMMENDATION

Plaintiff, Troy Everson, is a convicted prisoner currently incarcerated in the Washington Correctional Institute ("WCI") in Angie, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against WCI Warden James Miller and two unidentified officers. Plaintiff alleges that he was injured in a prison vehicle and denied adequate medical care for the injury while incarcerated in WCI from 2003 through the present. He seeks compensatory and punitive damages. Record Doc. No. 1 (Complaint at ¶ IV and V).

On May 5, 2005, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Jennifer Medley, counsel for defendants. Plaintiff was sworn

___ Fee___
___ Proc
_X_ Dktd___
___ CtRmDep___
___ Doc. No.___

and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Everson testified that he is currently incarcerated in WCI based on two convictions, one in 2000 and another in 2001, for distribution of drugs. He stated that he is serving a 15-year prison sentence. He confirmed that his claims in this case arise from an injury he suffered aboard a prison vehicle on April 30, 2003, and also involve the allegedly inadequate medical care he received thereafter for the head injuries he sustained in the incident.

Everson confirmed the accuracy of the medical records, production of which I had previously ordered, Record Doc. Nos. 5 and 9, and which he had received and reviewed (with a few exceptions later mentioned in his testimony). He referred to the medical records to refresh his recollection during his testimony, and he confirmed that the incident on which he bases his claims in this case occurred on or about April 30, 2003, on a WCI bus. He said his claims are both that the defendants are at fault for the bus accident and that he did not receive adequate medical care for the injuries he suffered.

As to the bus accident, Everson testified that on April 30, 2003, he was on the bus as part of a "field crew" of inmates who were being transported around prison grounds to work on gardens and other WCI facilities. He stated that the bus was equipped with

2

an iron rail bolted on its inside, and when the bus stopped so that inmates could get off to go to work, "when I got up I busted my head on the iron rail that was welded onto the bus." Everson said that there were some seats on the bus, but "where I was located, there ain't no seats on the bus. . . . They'd been removed for some reason I don't know."

Plaintiff testified that the iron rail was welded up high near the roof on the inside of the bus. He said that the iron rail served no purpose and did not belong there "because after the accident happened with me, they cut it off." He said it was not a hand rail, but was located about five and half feet above the floor of the bus and not high enough so that he might have avoided hitting it with his head when he stood up and "popped the top of my head on it."

Everson testified the incident occurred at about 10 a.m. that day. He said there were 28 inmates on the bus at that time. Asked why he thought defendants were responsible for the accident, he testified that the bus was "in violation" because there were too many inmates on the bus and some had nowhere to sit. He stated that the rail did not belong on the bus and if it had been removed he never would have "busted my head on it." Asked what he meant by "in violation," Everson said that the rail was not supposed to be there, that there were too many people on the bus and that defendants were in violation of "cautious standards" and did not keep the bus in good condition as they should. Plaintiff stated that the inmates were placed on the bus in numerical order

3

based on their prisoner numbers, and because his number was high he was placed in the back of the bus where there were no seats and he had to sit on a milk crate.

As to his medical care, Everson complained that he received no care at the site immediately after he struck his head, even though he was obviously bleeding. He testified that all that was done immediately in the bus was that he took his own work shirt and wrapped it around his head to try to stop the bleeding. Everson said the officers on the bus looked at his injury and made him walk to the WCI medical department. He confirmed the reference in his medical records that his first treatment for the injury occurred in the WCI emergency room "about 20 to 25 minutes" later. He said he had to walk on his own to the emergency room without any escort and with his work shirt wrapped around his head.

Everson confirmed the reference in the medical records that he suffered a scalp laceration, which he described as a "two or three inch gash, because I had like nine stitches in there." He said he has a two or three inch scar resulting from the cut located on the top of his forehead. He said the medical records were inaccurate in reflecting that he received four stitches, when in fact he received nine stitches for the cut. Plaintiff confirmed the other references in the medical records that in the emergency room he received sutures and was given a bandage and Motrin. He alleged that he was not

4

properly or professionally bandaged. He complained that after being stitched, bandaged and given Motrin, he was "sent on my way."

Everson testified that about a week later he was given an eye exam at WCI because he was suffering from double vision and dizziness. He confirmed the reference in the medical records that it was some time around May 9, 2003, when he saw the eye doctor. He said that the result of the eye exam was that the doctor gave him some eyeglasses. Everson confirmed that he was still taking Motrin at that time.

Plaintiff disagreed with the indication in the medical records that he was taken from WCI to the LSU Medical Center in Bogalusa, Louisiana, on May 13, 2003 for a CT scan of his head. At first, he said that he only went to that hospital a year later, in 2004, and that any record showing he was taken to the hospital in 2003 was not true. Later, he said that he did not remember going to the Bogalusa hospital in 2003, only in 2004.

He confirmed the accuracy of other references in his medical records to various sick call requests and visits to doctors at WCI during 2003 for headaches and other complaints related to the accident, when he was seen by Dr. Tran and nurses whose names he did not know. He recalled Dr. Warren as the name of the physician who gave him the eye exam and glasses.

Everson confirmed that he was taken to Charity Hospital in Bogalusa once in 2004 and later to Charity Hospital in New Orleans. He confirmed the reference in his medical

5

records that during his trip to the hospital in Bogalusa in 2004, he was given a CAT scan and x-rays of his head, and was told that the tests showed nothing wrong. He said he continued to complain to Dr. Thompson at WCI, who sent him to Charity Hospital in New Orleans for further tests. He said that the doctor also continued him on Motrin and boosted the strength of the Motrin dosage, but he broke out with swelling after being placed on the different medication level, so he was taken again to a hospital allergy clinic in March 2005 and again on April 11, 2005 to Charity Hospital in New Orleans.

In summary, Everson stated that he had been taken to a hospital offsite from the prison for the various medical problems he experienced as a result of the bus accident "five or six times" and that he had also seen doctors at the jail "a lot of times" but the doctors at the jail, including a new one named Dr. Thomas, could not figure out what might be wrong, so he had been sent to the hospital for more evaluation.

Asked what continuing medical problems he was suffering, Everson testified that "I'm steady suffering with headaches and double vision and blacking out." He said his duty status is light work because he might pass out from dizziness if assigned to do the heavier work he used to do. He said his laceration had healed, but he still has a knot on his head, a scar and constant headaches.

Everson stated that he is requesting an emergency transfer from WCI to another facility where he can get better medical treatment and where he will not face possible

6

retaliation. He stated that he had been given the wrong type of medicine that caused him "to break out" and he wants to be transferred to a facility where he will get proper medical treatment.

## ANALYSIS

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more

7

comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of his federal constitutional rights, even under the broadest reading.[1]

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

II.    PRESCRIPTION

All of Everson's Section 1983 claims asserted in connection with the bus accident and some of his claims concerning his medical care are barred by the applicable statute of limitations. Although Section 1983 contains no express statute of limitations, the one-year Louisiana prescriptive period is applicable to suits in this federal court under Section 1983. Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998); Washington v. Breaux, 782 F.2d 553, 554 n.1 (5th Cir. 1986); Jones v. Orleans Parish Sch. Bd., 688 F.2d 342 (5th Cir. 1982). Louisiana law provides for a one-year prescriptive period from the date of injury or damage. La. Civ. Code art. 3492; Freeze v. Griffith, 849 F.2d 172, 175 (5th Cir. 1988).

The date when the clerk of court receives the complaint, rather than the formal filing date, usually establishes the time of filing in forma pauperis complaints. Martin v. Demma, 831 F.2d 69, 71 (5th Cir. 1987). However, in the pro se prisoner context, a "mailbox rule" applies so that the date when prison officials receive the complaint from the plaintiff for delivery to the court is considered the time of filing for limitations purposes. Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995); Thompson v. Raspberry, 993 F.2d 513, 515 (5th Cir. 1993) (pro se prisoner's objection to magistrate's report and recommendation deemed filed when forwarded to prison officials for delivery to court).

In this case, the earliest date on which prison officials could have received the instant complaint from plaintiff for delivery to this court is January 26, 2005, the date on which he signed his complaint.[2]   Record Doc. No. 1 (Complaint at ¶ VI).   Thus, Everson's complaint is considered to have been filed and this action commenced on January 26, 2005, for limitations purposes.

The Fifth Circuit has held that the Section 1983 prescriptive period commences when the aggrieved party either knows of the violation or has notice of facts which, in the exercise of due diligence, would have led to actual knowledge.   Brown v. Nationsbank Corp., No. 97-41214, 1999 WL 694692, at *8 (5th Cir. Sept. 8, 1999); Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir. 1995) (citing Vigman v. Community Nat'l Bank & Trust Co., 635 F.2d 455, 459 (5th Cir. 1981)).   In addition to applying the forum state's statute of limitations, however, federal courts should also give effect to any applicable tolling provisions provided by state law.   Parks v. City of Slidell, No. 97-1993, 1998 WL 158952, at *4 (E.D. La. Apr. 1, 1998) (Clement, J.) (citing Gartrell v. Gaylor, 981 F.2d 254, 257 (5th Cir. 1993)).

The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem. Under this theory, there are four situations in which the one-year prescriptive

---

[2] The clerk of court actually filed the complaint in this court on March 18, 2005.

11

period for delictual actions will not run: (1) if there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action, (2) if there was some condition coupled with a contract or connected proceeding which prevented the creditor from suing or acting, (3) if the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action and (4) if the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Id. (citing Corsey v. Department of Corrections, 375 So. 2d 1319, 1321-22 (La. 1979)).

Thus, the "doctrine of contra non valentem recognizes that in limited circumstances prescription should not run if good cause exists as to why plaintiff would have been unable to exercise or was lulled into not exercising a cause of action when it first became exigible." Pracht v. City of Shreveport, 830 So.2d 546, 551 (La. App. 2d Cir. 2002).

In addition, the continuing tort doctrine may act to extend the prescriptive period, but only if the events giving rise to the claim are truly continuing in nature. Thus, "'when the cause of the injury is a continuous one giving rise to successive damages,' prescription does not begin until the conduct causing the damage is abated." Id. at 550 (quoting South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531 (La. 1982)) (emphasis added). "A continuing tort exists where a defendant's damaging conduct is

a continuing act and gives rise to successive damages from day to day." Coulon v. Witco Corp., 848 So.2d 135, 137 (La. App. 5th Cir. 2003) (emphasis added). Only "continuing and repeated wrongful acts are to be regarded as a single wrong" giving rise to application of the continuing tort doctrine. Wilson v. Hartzman, 373 So.2d 204, 207 (La. App. 4th Cir. 1979).

In this case, the event on which plaintiff bases his claims occurred on April 30, 2003, the date on which the bus accident occurred. Thus, as to the accident itself, plaintiff asserts a claim based exclusively upon events occurring more than one year prior to January 26, 2005, the date on which his complaint is deemed filed under the mailbox rule. The cause of his alleged injuries was a single vehicular accident, not a continuing series of wrongful acts. Although plaintiff alleges that his damages are continuing, it is only the continuing nature of the wrongful conduct causing it that triggers the continuing tort doctrine. Thus, the continuing tort doctrine does not apply to Everson's claim concerning the accident itself, which must be dismissed due to expiration of the one-year statute of limitations.

In addition, plaintiff has not asserted any cause or condition requiring application of the doctrine of contra non valentem. There is nothing that might have prevented him from filing his complaint within the applicable one-year prescriptive period. Everson's complaint establishes that, before one year prior to his filing of the instant action, he

clearly knew of defendants' allegedly unconstitutional actions. Nothing prevented him from filing this lawsuit in a timely fashion. The record establishes no condition that might have tolled the statute of limitations or upon which the doctrine of contra non valentem might be applied.

In short, because plaintiff did not commence this action within the required limitations period after he knew or should have known of the alleged constitutional violations, his claims under Section 1983 in connection with the bus accident on April 30, 2003, and medical care he received more than one year prior to January 26, 2005, the date on which his complaint is deemed filed in this court, are time-barred. However, as set out below, even if plaintiff's Section 1983 claims were not time-barred, his complaint is legally frivolous and fails to state a claim that his federal constitutional rights were violated, on which relief can be granted for the following reasons.

III.   MERE NEGLIGENCE

Even if his plaintiff's claims were not time-barred, plaintiff's testimony concerning the bus accident at best asserts a negligence claim, not claims of civil rights violations cognizable under Section 1983. Claims arising from allegedly negligent acts do not give rise to relief under Section 1983.

The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or

14

property." Daniels v. Williams, 474 U.S. 327, 328 (1986); accord Davidson v. Cannon, 474 U.S. 344, 347 (1986). In a number of contexts, the Fifth Circuit has determined that allegations amounting to negligence cannot support a Section 1983 claim. Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence is insufficient to support a failure to protect claim under Section 1983); Eason v. Thaler, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); Doe v. Taylor Indep. Sch. Dist., 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care).

Everson's allegations that the iron bar on which he bumped his head was improperly located or that prison officials acted unreasonably in placing too many inmates on the bus without enough seats to accommodate them all do not amount to a violation of constitutional rights. Defendants cannot be liable under Section 1983 for injuries resulting from alleged acts of negligence. If plaintiff seeks relief for defendants'

alleged negligence, he must do so in state court by asserting state law tort claims, not Section 1983 constitutional violations.  28 U.S.C. § 1367(c)(3) and (d).

IV.   MEDICAL CARE

Everson claims that he received inadequate medical treatment after he was injured in the bus accident on April 30, 2003.  As discussed above, plaintiff's claims concerning medical care received more than one year prior to January 26, 2005, the date on which his complaint is deemed filed in this court, are barred by the applicable statute of limitations.  However, even if his claims concerning medical care are not time-barred, plaintiff's testimony establishes that he received constitutionally adequate medical care during the entire period of his incarceration at WCI.

Everson was a convicted prisoner at all relevant times about which he complains. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.   Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face

16

a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 114 S. Ct. 1970, 1984 (1994). The <u>Farmer</u> definition applies to Eighth Amendment medical claims. <u>Reeves</u>, 27 F.3d at 176. The Fifth Circuit has reiterated in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), that the deliberate indifference standard applies to convicted prisoners like Everson.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. <u>Farmer</u>, 114 S. Ct. at 1979 (citing <u>Wilson</u>, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 1979.

17

"The Supreme Court has recently reaffirmed that 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997) . . . . The 'deliberate indifference' standard permits courts to separate omissions that 'amount to an intentional choice' from those that are merely 'unintentionally negligent oversight[s].'" Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In this case, plaintiff's allegations negate any inference that defendants acted with deliberate indifference to plaintiff's serious medical needs. Initially, it cannot be concluded that the conditions he described presented a serious medical need that posed a substantial risk of harm during his incarceration at WCI. Everson's principal complaint is a head laceration with resulting pain and headaches. These complaints do not rise to the level of a serious medical need for purposes of constitutional analysis. See Martin v. Tyson, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (delay in treating tooth ache and ear infection not sufficiently serious); Griffin v. DeRobertis, 557 F.Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious); Banks v. Mannoia, 890 F.Supp. 95, 99 (N.D.N.Y. 1995) ("'bowel problems'" and headaches not considered a serious medical

18

problem); cf. Baker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd, 19 F.3d 37 (11th Cir. 1994) (pneumonia is a serious medical need, but no deliberate indifference existed when plaintiff was examined by physician and received prescription medication).

Even assuming, however, that plaintiff's medical problems resulting from the head injury were serious, he has alleged facts, confirmed by the medical records, that negate any conceivable inference of deliberate indifference by jail officials. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention while incarcerated in WCI. Plaintiff was seen by doctors on numerous occasions, both inside the jail and at hospitals where he was transported by prison officials for more extensive evaluation. His laceration was sutured. He was given a CT scan and x-rays. His eyes were examined and he was provided with eyeglasses. He was given pain medication. Although plaintiff alleges delay in being provided with medical care and dissatisfaction with the quality of care received, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

First, mere delay in receiving care is not in and of itself a constitutional violation. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985).

19

Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 302. The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs). No such permanent loss resulting from delay has been alleged in this case at this time.

Second, while it is clear from plaintiff's allegations and testimony that he is not satisfied with the quality or effectiveness of his medical care, it is equally clear that the medical care provided has been constitutionally adequate. Certainly, no finding of deliberate indifference to his medical needs can be made based on this record, which includes frequent attention and treatment by medical personnel and the provision of medication and evaluative testing for his complaints.

Contentions like Everson's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section

1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999) (citing <u>Mendoza</u>, 989 F.2d at 193) (active treatment of prisoner's serious medical condition that ultimately resulted in death does <u>not</u> constitute the requisite deliberate indifference, even if the treatment was negligently administered); <u>see</u> <u>Norton</u>, 122 F.3d at 291-92; <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991); <u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

Thus, for all of the foregoing reasons, plaintiff's complaints in this case about his medical care fail to state a claim for violation of his constitutional rights sufficient to obtain relief under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10)

21

days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object. <u>Douglass v. United

Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____ day of June, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE